IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN RIAPOS,

         Plaintiff,

         v.

SUNTRUST BANKS, INC.,

         Defendant.

Civil Action No. _____

Jury Trial Demanded

## COMPLAINT

Plaintiff Karen Riapos ("Plaintiff" or "Ms. Riapos") states her complaint against Defendant SunTrust Banks, Inc. ("Defendant" or "SunTrust") as follows:

## INTRODUCTION

1.

This is a civil rights action for money damages and equitable and declaratory relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to

28 U.S.C. § 1331 and § 1343, as well as 42 U.S.C. § 2000e-5.

3.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the violations of Plaintiff's civil rights alleged herein were committed in and Defendant is a resident of this judicial district.

**PARTIES**

4.

Ms. Riapos is, and at all times relevant to suit has been, a resident and a citizen of the State of Georgia.  She was employed by Defendant SunTrust from approximately October 2005 until April 2008, and then from March 2010 until her wrongful and discriminatory termination on November 4, 2011.

5.

Ms. Riapos is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6.

Defendant SunTrust is a Georgia corporation with its principal place of business in Atlanta, Fulton County, Georgia.  It can be served with a copy of the summons and Complaint through its registered agent, Raymond D. Fortin, at 303 Peachtree Street NE, Suite 3600, Atlanta, Georgia 30308.

7.

SunTrust is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

8.

Ms. Riapos worked for SunTrust as a recruiter from October 2005 until April 2008.  During this time she was never made aware of any performance problems.  Ms. Riapos voluntarily resigned from SunTrust in April 2008 to take a position with another bank.

9.

In early 2010, SunTrust approached Ms. Riapos about returning to work there.  Ms. Riapos returned to SunTrust as a recruiter effective March 1, 2010.

10.

At various times from March 2010 through approximately the end of September 2011, Ms. Riapos reported to Amanda LaHaie, SunTrust's Group Vice President for Talent Acquisition, and Michael Eads, SunTrust's Vice President, Staffing Manager.

11.

During her second tenure at SunTrust, Ms. Riapos again excelled at her job.

12.

Before she became pregnant, Ms. Riapos received positive performance evaluations, performance ratings of "fully successful" or higher, and merit-based pay raises, all reflections that SunTrust was satisfied with her job performance.

13.

In or around September 2010, Ms. Riapos learned she was newly pregnant with twins.

14.

Ms. Riapos informed SunTrust (through Mr. Eads) of her pregnancy in or around October 2010.

15.

On January 20, 2011 (a Thursday), following a routine visit to her doctor, Ms. Riapos was admitted to the hospital.  Sometime during the following weekend, she was informed by her doctors that they were placing her on hospital bed rest for the duration of her pregnancy.

16.

Ms. Riapos filed for medical leave from SunTrust effective January 24, 2011, which was the first business day after she learned that her doctors were ordering her on bed rest.

17.

Ms. Riapos's leave request was approved and she remained on bed rest until her twins were born on February 27, 2011.

18.

Ms. Riapos's twins were born prematurely, and only one of her sons survived. He remained in the hospital's neo-natal intensive care unit ("NICU") for approximately five months, until July 31, 2011.

19.

Meanwhile, Ms. Riapos was released from bed rest and allowed to return to work on April 13, 2011.

20.

Upon returning from medical leave, Ms. Riapos spoke with Mr. Eads and Ms. LaHaie about her desire to work until she could bring her son home from the NICU, and then taking a maternity leave once her son was home.

21.

Mr. Eads and Ms. LaHaie agreed to allow Ms. Riapos to do that. However, they informed Ms. Riapos that if SunTrust needed to call her back during her maternity leave, she would need to report back. Ms. Riapos agreed to that condition.

22.

Ms. Riapos brought her son home from the NICU on July 31, 2011.

23.

Ms. Riapos had planned to start her leave on July 31, immediately after bringing her son home, but because Ms. LaHaie and two other recruiters were on vacation at that time, Ms. Riapos decided to delay the beginning of her leave until they returned out of concern for SunTrust's best interests.

24.

With the consent of her supervisors, Ms. Riapos took what SunTrust referred to as her maternity leave from August 4, 2011 through October 2, 2011, approximately eight weeks.

25.

Throughout her maternity leave, Ms. Riapos regularly checked her work e-mails and remained accessible by cell phone and e-mail to her supervisors, colleagues, and other SunTrust employees.

26.

Ms. Riapos received no complaints from SunTrust during her maternity leave, nor did SunTrust ask her to report to work before the scheduled end of that leave.

27.

On October 3, 2011, Ms. Riapos returned from maternity leave and began reporting to Lin Bennett, who by that time had replaced Mr. Eads as SunTrust's Vice President, Staffing Manager.

28.

Upon returning from maternity leave, Ms. Riapos learned that two human resources ("HR") positions for which she had begun the recruiting process before her leave had not been filled.  She began trying to fill these two positions.

29.

On several occasions, Ms. Riapos submitted candidates for one of the positions.  Ms. Riapos also informed SunTrust that despite speaking with many individuals, she was having difficulty locating qualified candidates for the second position.

30.

On or around October 24, 2011, Ms. Riapos met with Charlene Keeney, the hiring manager responsible for the two HR positions.   They discussed the candidates whom Ms. Riapos had submitted for the one position, and Ms. Keeney made some changes to the second position to facilitate finding a qualified individual for the job.

31.

Shortly after the October 24 meeting, Ms. Riapos sent Ms. Keeney a list of candidates for the second job and arranged for Ms. Keeney to speak with the candidates she was most interested in. Ms. Keeney spoke with some of those candidates throughout the week of October 24.

32.

On or about Friday, October 28, 2011, Ms. Riapos contacted Ms. Keeney to get feedback about the candidates Ms. Keeney had spoken with. Ms. Riapos also informed Ms. Keeney that she (Ms. Riapos) would be out of the office for three days the following week (from Monday, October 31 until Wednesday, November 2) due to a death in her family.

33.

On Friday, November 4, 2011, Ms. Bennett suddenly and without any warning terminated Ms. Riapos, stating that SunTrust "lacked the faith that [Ms. Riapos] could do [her] job at the level [SunTrust] expected." Ms. Riapos asked for further explanation, but Ms. Bennett could not or would not elaborate.

34.

Prior to her termination, Ms. Riapos was never made aware of any performance problems.

35.

Ms. Riapos was also never placed on a performance improvement plan, which is SunTrust's standard approach to remedying sub-standard job performance by its employees.

36.

Ms. Riapos was also never made aware of any other problems related to her employment, let alone problems so serious as to warrant her termination.

## ADMINISTRATIVE PROCEDURES

37.

Ms. Riapos filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 23, 2012.

38.

The EEOC issued a Notice of Right to Sue on November 26, 2012.

39.

This action is timely brought within ninety (90) days of Ms. Riapos's receipt of her Notice of Right to Sue.

40.

All conditions precedent to the filing of this Complaint have been satisfied.

## SUBSTANTIVE CLAIMS

### Count I: Pregnancy Discrimination in Violation of Title VII

41.

The preceding paragraphs are incorporated herein by reference.

42.

Title VII prohibits employers from taking adverse employment actions against women due to pregnancy or pregnancy-related medical conditions.

43.

SunTrust's acts alleged herein, including the termination of Ms. Riapos's employment in November 2011, constitute adverse employment actions taken in response to Ms. Riapos's pregnancy and her pregnancy-related medical leave.

44.

SunTrust's discriminatory acts were done intentionally and with malice or reckless indifference to Ms. Riapos's rights under Title VII.

45.

SunTrust's actions have caused Ms. Riapos to suffer both monetary and non-monetary damages, as well as emotional pain and suffering.

### *Count II:    Breach of Contract*

46.

The preceding paragraphs are incorporated herein by reference.

47.

SunTrust's agreement to allow Ms. Riapos to take what was referred to as her maternity leave was a binding and legally enforceable contract between SunTrust and Ms. Riapos.

48.

Ms. Riapos performed all that was required of her under the contract by, among other things, taking only the agreed-upon eight weeks of leave and remaining accessible and communicative during that leave.

49.

SunTrust relied, in part, on Ms. Riapos's having taken that maternity leave when it decided to terminate her employment.

50.

By purporting to allow Ms. Riapos to take a leave from work and then using that leave against her and terminating her employment, SunTrust breached its contract with Ms. Riapos.

51.

SunTrust has no legal excuse justifying its failure to honor its contractual obligations to Ms. Riapos.

52.

SunTrust's breach of its contract caused Ms. Riapos to suffer damages by depriving her of income, benefits, and opportunities for advancement.

53.

Ms. Riapos is entitled to recover actual and compensatory damages, pre- and post-judgment interest, and reasonable attorneys' fees and expenses from SunTrust.

### Count III:   Promissory Estoppel

54.

The preceding paragraphs are incorporated herein by reference.

55.

Should a Court determine that no enforceable contract existed between the Parties (which is not conceded by Ms. Riapos), then in the alternative, Ms. Riapos asserts a claim for promissory estoppel against SunTrust.

56.

SunTrust made Ms. Riapos a promise when it assured her that it would allow

her to take a maternity leave of approximately eight weeks in duration.

57.

SunTrust expected (and indeed, knew) that Ms. Riapos would rely on that promise by taking the agreed-upon maternity leave.

58.

Ms. Riapos reasonably and justifiably relied upon SunTrust's promise and took maternity leave, believing that this was permitted and that it would not be held against her or used as a basis upon which to justify her termination.

59.

In order to avoid manifest injustice, SunTrust must be required to honor its promise to Ms. Riapos and reinstate her employment or pay monetary damages to compensate her for its wrongful conduct.

**WHEREFORE**, Ms. Riapos prays for the following relief:

a) That a trial by jury be had for all issues so triable;

b) That the Court order SunTrust to make Ms. Riapos whole by providing for her reinstatement (or, alternatively, an award of three years' front pay), and an award of back pay and other benefits and expenses in an amount to be proven at trial;

c) That the Court order SunTrust to pay monetary damages to Ms. Riapos to compensate her for all damages incurred as a result of SunTrust's unlawful actions;

d) That the Court order SunTrust to pay Ms. Riapos's reasonable attorneys' fees and expenses of litigation; and

e) That the Court award such other and further relief as it deems appropriate.

Filed this 23rd day of February, 2013.

_s/ Jennifer K. Coalson_
A. Lee Parks, Jr.
Georgia Bar No. 563750
Andrew Y. Coffman
Georgia Bar No.
Jennifer K. Coalson
Georgia Bar No. 266989

**PARKS, CHESIN & WALBERT, P.C.**
75 Fourteenth Street
26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
acoffman@pcwlawfirm.com
jcoalson@pcwlawfirm.com

_Counsel for Plaintiff_